**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JOSEPH LAURICELLA, | |
| Plaintiff, | Case Number:  4:20-cv-00974 |
| v. | **JURY TRIAL DEMANDED** |
| 3M COMPANY, et al., | |
| Defendants. | |

## <u>NOTICE OF REMOVAL</u>

Defendants 3M Company ("3M") and Aearo Technologies LLC ("Aearo") (collectively, "Defendants") hereby give notice of removal of this action, pursuant to 28 U.S.C. §§ 1441, 1442(a)(1), and 1446, to the United States District Court for the Eastern District of Missouri, Eastern Division. This action is based on the same allegations and asserts the same types of claims as other removed actions now pending in *3M Combat Arms Earplug Products Liability Litigation*, MDL No. 2885, in the U.S. District Court for the Northern District of Florida. The MDL Court has determined that there is federal jurisdiction over these actions pursuant to 28 U.S.C. § 1442(a)(1), when it denied over three hundred motions to remand in cases with materially similar facts and allegations. *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19MD2885, 2020 WL 365617 (N.D. Fla. Jan. 22, 2020). This action is removable for the same reasons cited by the MDL Court, as well as additional reasons set forth below.

{00592274}

Plaintiff Joseph Lauricella ("Plaintiff") is a former servicemember who seeks to hold Defendant 3M[1] liable for hearing loss he allegedly suffered while serving in the United States Marine Corps during training and/or while deployed on active military duty. *See* Exhibit A (Petition at ¶ 7). He contends that Dual-Ended Combat Arms™ Earplugs ("earplugs"), created by Aearo and manufactured and distributed by 3M and/or by Aearo, were defectively designed and failed to provide adequate hearing protection. (Petition at ¶ 8). 3M and Aearo deny these allegations. The earplugs, designed by Defendants, in close collaboration with the U.S. military, represented a revolutionary breakthrough in hearing protection for service members. The earplugs helped servicemembers better maintain situational awareness (e.g., to hear nearby voice commands) while also maintaining some protection from gunfire and other higher decibel sounds. The earplugs met the U.S. military's specifications and helped the military provide hearing protection to servicemembers.

In this action, Defendants intend to assert the federal government contractor defense. Aearo sold the earplugs to the U.S. military under government contracts and in accordance with the military's rigorous specifications. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Defendants are entitled to remove this action to have their federal defense adjudicated in a federal forum. Such removal "fulfills the federal officer

---

[1] 3M acquired Aearo Technologies, Inc. ("Aearo") in 2008. After acquiring Aearo in 2008, 3M continued to sell the earplugs. Aearo Technologies LLC, named in the Petition, is a different entity from Aearo. Nonetheless, it consents to this removal.

removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008) (*citing Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 127 (2007)). The MDL Court has determined that federal jurisdiction exists in these actions because "Defendants have raised a colorable government contractor defense." *3M Combat Arms*, 2020 WL 365617 at *5 n.15.[2]

Separately, this action is also removable because Plaintiff seeks to hold Defendants liable for alleged injuries that occurred in part at U.S. military facilities in connection with Plaintiff's military service. (Petition at ¶ 7). Plaintiff specifically identified Afghanistan, Jordan, and Kuwait as well as training at Paris Island, South Carolina and Camp Geiger, North Carolina in his Petition, which are "federal enclaves" for jurisdictional purposes. *See Liteky v. U.S.*, 510 U.S. 540, 542 (1994). "Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006). Because Plaintiff's claims arose, at least in part, at federal enclaves, the claims involve a federal question, and 3M may remove this action under 28 U.S.C. § 1441(a).

Removal is timely because this action was served on 3M on June 30, 2020. Venue is proper pursuant to 28 U.S.C. §§ 103 and 1441(a) because the 21st Judicial Circuit, St. Louis County, Missouri is located within this District. Pursuant to 28 U.S.C. § 1446(d), a

---

[2] Because the MDL Court determined that federal jurisdiction existed based on the government contractor defense, it did not reach Defendants' other bases for removal.

copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the 21st Judicial Circuit.

## **BACKGROUND**

The earplugs that Plaintiff alleges he used have two insertable ends developed specifically for the needs of the U.S. military for use as hearing protection in noisy environments. The earplugs have a yellow end and green end. Each end has a different purpose. When the yellow end of the earplug is inserted, users can still hear nearby low-level sounds, like verbal communication, but receive protection from high-level impulse noise, like gunfire. In contrast, when the green end of the earplug is inserted, the earplugs act like a traditional earplug, providing steady and continuous protection from both ambient and impulse noise.

In the area of national defense, the U.S. military relies on close collaboration with private contractors to design and develop products, such as the earplugs, and to manufacture and supply those products in accordance with highly particular specifications balancing the multitude of operational and budgetary needs of equipping the nation's fighting forces. This litigation involves a classic example of that military-contractor collaboration.

The earplugs were designed at the request of and in consultation with military audiologists, including Dr. Doug Ohlin. Ohlin at the time served in the capacity of Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventive Medicine (USACHPPM). Ohlin and his program gave direction to Aearo to

{00592274}                                    4

ensure that the earplugs would appropriately balance performance with military operational needs for servicemembers. For example, Ohlin proposed the inclusion of the filter that was a key updated feature of the earplugs. Ohlin specifically directed Aearo to shorten the earplugs so that they did not interfere with the chinstraps of servicemembers' helmets and fit in a military-issued carrying case. Ohlin also was informed of Aearo's testing of the earplugs.[3] Following the development of the product, Ohlin was involved in the ultimate approval of the earplugs for military use and proposed purchasing the earplugs to the Joint Readiness Clinical Advisory Board.

In sum, the earplugs were launched at the request of, and in close coordination with, the U.S. military. The earplugs' design reflects the direction and feedback of individuals acting on behalf of the U.S. military. The U.S. military purchased the earplugs and issued them to servicemembers like Plaintiff precisely because the earplugs fulfill the military's specifications and accomplish the military's goal of balancing hearing protection with operational needs.

## BASES FOR FEDERAL JURISDICTION AND REMOVAL

### I.    REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE.

Removal is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. Removal rights

---

[3] Ohlin's involvement continued following the military's decision to purchase and deploy the earplugs. He provided Aearo with feedback from military personnel as to using the earplugs and developed training and instructions for military personnel.

{00592274}                                    5

under this section are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because Section 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prod.*, No. 11 Civ. 5990 (BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011). This important federal policy "should not be frustrated by a narrow, grudging interpretation of s 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

The removing defendant must establish that: (1) the defendant is a "person" under the statute; (2) the defendant was "acting under" the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) the defendant was acting "under color of" federal office at the time of the allegedly tortious conduct; and (4) the defendant raises a "colorable" federal defense. *See Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012). All requirements for removal under § 1442(a)(1) are satisfied here. *Cf., e.g., Ayo v. 3M Co.*, No. 18-CV-0373 (JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in case where product liability was sought for defendants' product's conformance with military specifications). The MDL court concluded that Defendants established these elements for the purposes of removal. *3M Combat Arms*, 2020 WL 365617 at *3-*6.

{00592274}                                                6

### A.  The "Person" Requirement Is Satisfied.

The first requirement for removal under Section 1442 is satisfied because 3M is a "person" under the statute. For purposes of § 1442(a)(1), the term "person" includes "'companies, associations, firms, [and] partnerships.'" *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); *Isaacson*, 517 F.3d at 135-36 (holding non-natural person to be a "person" under § 1442).

### B.  The "Acting Under" Requirement Is Satisfied.

To satisfy the second requirement ("acting under" a federal officer) "a private person's actions 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Jacks*, 701 F.3d at 1230 (holding that health insurer contracted by U.S. Office of Personnel Management was "acting under" a federal officer) (quoting *Watson*, 551 U.S. at 152). "The words 'acting under' are to be interpreted broadly." *Isaacson*, 517 F.3d at 136. Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813; *see also Jacks*, 701 F.3d at 1230 (although "not limitless, '[t]he words "acting under" are broad,' and the Supreme Court 'has made clear that the statute must be "liberally construed."'") (quoting *Watson*, 551 U.S. at 147).

The "acting under" requirement is met here because Plaintiff directly challenges Defendants' alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137.

As discussed above, Aearo designed and manufactured the earplugs at the direction of the U.S. military to meet the military's specific needs to provide hearing protection.

Aearo developed the earplugs under the direction of, and with significant involvement of, representatives of the U.S. military. *See e.g. Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (holding that defendant was "acting under" a federal officer because it "worked hand-in-hand with the government, assisting the federal government in building warships. 'Acting under' covers situations, like this one, where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete."); *Isaacson*, 517 F.3d at 137 ("Defendants contracted with the Government to provide a product that the Government was using during war—a product that, in the absence of Defendants, the Government would have had to produce itself."); *In re National Prescription Opiate Litig.*, 327 F. Supp. 3d 1064, 1075-76 (N.D. Ohio 2018) (removal under § 1442 was appropriate were defendant was subject to "precise specifications" of government contract, administration of contract was overseen by federal official, and absent defendant's role, government would have had to warehouse and distribute product itself); *see also 3M Combat Arms*, 2020 WL 365617, at *3 ("Defendants have shown that Plaintiffs' allegations are directed at their actions, or their failure to act, in connection with federal contracts to produce an item that [the government] needed…").

As described above, the military's involvement went beyond merely establishing standards. It also required Aearo to shorten the earplugs for specific operational reasons. Aearo's compliance with the military's directions is quintessential activity "acting under"

{00592274}                                    8

a federal officer. *See e.g. Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998) (authorizing removal of a tort suit against private defense contractors that manufactured Agent Orange); *Gordon v. Air & Liquid Sys. Corp.*, 990 F. Supp. 2d 311, 320 (E.D.N.Y. 2014) (contractor was "acting under" a federal officer for purposes of removal statute when it provided products used in construction of ships to Navy's precise specifications); *see 3M Combat Arms*, 2020 WL 365617, at *4 ("Here, Plaintiffs' allegations are clearly directed at Defendants' actions in connection with its contractual relationship with the military involving the [earplugs].").

### C. The "Causation" Requirement Is Satisfied.

The third prong, that a defendant's actions were taken "under color of federal office . . . has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (internal quotation marks, alterations, and citation omitted). Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Id.* Courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Isaacson*, 517 F.3d at 137 (*citing Acker*, 527 U.S. at 431-32 (1999) ("demanding an airtight case on the merits in order to show the required causal connection" would "defeat the purpose of the removal statute").[4] In 2011, Congress further expanded Section 1442 by amending section 2(b) to permit removal "for *or relating to* any acts under color" of federal office,

---

[4] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

so as "to broaden the universe of acts that enable Federal officers to remove to Federal court." H.R. REP. 112-17, 6, 2011 U.S.C.C.A.N. 420, 425 (emphasis showing addition).

"To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties." *Isaacson*, 517 F.3d at 137-38 (emphasis in original). Here, Plaintiff's claims arise from Defendants' production and sale of the earplugs to military-approved specifications. Plaintiff alleges that the design of the earplugs is defective. Aearo developed and designed the Combat Arms™ earplugs, including establishing its length, at the direction of federal officers.

Further, even if Plaintiff was to prove that any alleged defect was the result of an act not specifically contemplated by the government contract, "it is enough that the contracts gave rise" to the harm alleged. *See Isaacson*, 517 F.3d at 138. "[W]hether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer." *Id.* (*citing Willingham*, 395 U.S. at 409.); *see also 3M Combat Arms*, 2020 WL 365617, at *4.

### D. The "Colorable Federal Defense" Requirement Is Satisfied.

The fourth requirement (establishing a "colorable federal defense") is satisfied by Defendants' assertion of the government contractor defense. Courts around the country have held that the government contractor defense and the combatant activities defense support removal under § 1442(a)(1). *See, e.g., Jacks*, 701 F.3d at 1234-35 (government

contractor defense supports removal under § 1442); *Isaacson*, 517 F.3d at 139 (same); *Zeringue v. Crane Co.*, 846 F.3d 785 (5th Circuit 2017) (same); *McMahon v. Presidential Airways, Inc.*, 410 F. Supp. 2d 1189, 1200 (M.D. Fla. 2006) (government contractor defense supported removal under Section 1442).

A defendant need not prove its defense at the removal stage; a defendant need only show that a federal defense is "colorable." *Jacks*, 701 F.3d at 1235. Courts will not "require that these defenses be clearly sustainable in order to support removal under § 1442(a)(1)." *Id.* (*citing Willingham*, 395 U.S. at 406–07 ("[The federal officer removal statute] is broad enough to cover all cases where federal officers can raise a colorable defense. . . . The officer need not win his case before he can have it removed.").)

At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116 (citing *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n. 12 (2006)).[5] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not

---

[5] *See also Kraus v. Alcatel-Lucent*, Civil Action No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determines whether there are sufficient facts alleged to raise a colorable defense.").

{00592274}                                    11

a state, court.'" *Cuomo*, 771 F.3d at 116 (quoting *Willingham*, 395 U.S. at 409).

**1.  Defendants Have a Colorable Government Contractor Defense.**

Under the government contractor defense, the defendant is not liable for alleged defects in military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

Defendants have satisfied all of these elements for purposes of removal.  *See 3M Combat Arms*, 2020 WL 365617, at *5 ("Having put forth facts sufficient to plausibly satisfy all three elements of *Boyle*, Defendants have presented a colorable government contractor defense for purposes of § 1442(a)(1)."). As discussed above, the military approved reasonably precise specifications for the design of the earplugs, and the earplugs Aearo shipped to the military conformed with the approved specifications.

Finally, the government was adequately informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in approving and procuring the earplugs. The U.S. military was actively involved in discussions with Aearo in the development of the earplugs regarding its length and instructions for use. Aearo's engineers discussed the challenges, and trade-offs, in conforming the design of the earplugs to fit within the military's desired carrying cases and with its other equipment.

At minimum, this constitutes colorable evidence that the U.S. military generally "made a discretionary determination" regarding the requirements and design of the

{00592274}                              12

earplugs' benefits against the alleged risks. *See In re Agent Orange Prod. Liab. Litig.*, 517

F.3d 76, 90 (2d Cir. 2008); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145,

at *14 (E.D.N.Y. Sept. 30, 2018) (holding removal proper under §1442 because defendants

presented "colorable evidence" that government was aware of alleged problems with

product at issue); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required

to warn the government where 'the government knew as much or more than the defendant

contractor about the hazards of the product.'") (citation omitted); *see also 3M Combat

Arms*, 2020 WL 365617, at *5 ("Having put forth facts sufficient to plausibly satisfy all

three elements of *Boyle*, Defendants have presented a colorable government contractor

defense for purposes of § 1442(a)(1).").  Where, as here, the government has exercised

"discretionary authority over areas of significant federal interest such as military

procurement," the government contractor defense applies. *Agent Orange*, 517 F.3d at 89-

90; *see also Ayo*, 2018 WL 4781145, at *13.

## II.    REMOVAL IS ALSO PROPER BECAUSE PLAINTIFF'S CLAIMS AROSE IN PART ON FEDERAL ENCLAVES

In addition, removal of this action is proper because Plaintiff's claims certainly

arose, at least in part, at federal enclaves—namely, U.S. military facilities in the United

States. To that extent, the claims are governed by federal law and are subject to this Court's

federal question jurisdiction under 28 U.S.C. § 1331. Thus, this action is removable under

28 U.S.C. § 1441(a).

"A federal enclave is a portion of land over which the United States government

{00592274}                                   13

exercises federal legislative jurisdiction." *Brookhaven Sci. Assocs., LLC v. Donaldson*, No. 04 Civ. 4013(LAP), 2007 WL 2319141, at *5 (S.D.N.Y. Aug. 9, 2007) (internal quotation and citation omitted). The Constitution confers on Congress the power "[t]o exercise exclusive legislation" over the District of Columbia "and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings." U.S. Const. art. I, § 8, cl. 17. "It has long been settled that where lands for such a purpose are purchased by the United States with the consent of the State legislature, the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to the United States, thereby making the jurisdiction of the latter the sole jurisdiction." *Surplus Trading Co. v. Cook*, 281 U.S. 647, 652 (1930).

Because the United States exercises sole lawmaking authority over a federal enclave, the law applicable to that enclave is, by definition, federal law, although such federal law may incorporate state-law rules of decision. *See, e.g.*, *Mater v. Holley*, 200 F.2d 123, 124 (5th Cir. 1952) ("[A]ny law existing in territory over which the United States has 'exclusive' sovereignty must derive its authority and force from the United States and is for that reason federal law"); *accord Macomber v. Bose*, 401 F.2d 545, 546 (9th Cir. 1968) ("State law theretofore applicable within the [ceded] area was assimilated as federal law, to remain in effect until changed by Congress. Rights arising under such assimilated law, arise under federal law and are properly the subject of federal jurisdiction."); *Brookhaven Sci. Assocs.,* 2007 WL 2319141, at *5 ("[W]hen an area becomes a federal enclave, the

{00592274}                                        14

state law in effect at the time of cession becomes federal law and is the applicable law unless Congress provides otherwise.").

Federal courts have federal question jurisdiction under 28 U.S.C. § 1331 for actions involving tort claims that arise on federal enclaves. *See, e.g.*, *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998) (movant properly removed case to federal court when case was removed based on movant's status as a "person acting under" a federal officer, and status of the Air Force base as a federal enclave). It follows that such actions, if originally filed in state court, may be removed to federal court under 28 U.S.C. § 1441(a). *See, e.g.*, *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1236 (10th Cir. 2012) (affirming grant of summary judgment on state employment law claims as barred by federal enclave doctrine after removal from state court).

Plaintiff's Petition specifically identifies Marine Corps facilities Paris Island, South Carolina and Camp Geiger, North Carolina where he was issued and used the earplugs, and allegedly suffered hearing damage. *See Jamil v. Workforce Res., LLC*, Case No.: 18-CV-27-JLS (NLS), 2018 WL 2298119, at *2 (S.D. Cal. May 21, 2018) (inferring from Complaint that some of the alleged events must have occurred at Marine Corps base, a federal enclave, and denying motion to remand). Because Plaintiff's claims arose, at least in part, at a federal enclave, this Court has subject matter jurisdiction over the action, and removal of the action is proper under 28 U.S.C. § 1441(a).

{00592274}                                            15

## **CONCLUSION**

For all the foregoing reasons, Defendants hereby remove this action from the St.

Louis County Circuit Court to this Court.

Dated this 27th day of July 2020.

Respectfully submitted,

*/s/ Michael T. Crabb*
Stephen J. Torline (MO #18292)
Michael T. Crabb (MO #62241)
KUCKELMAN TORLINE KIRKLAND
10740 Nall Avenue, Suite 250
Overland Park, Kansas 66211
T: (913) 948-8613     F: (913) 948-8611
storline@ktk-law.com
mcrabb@ktklattorneys.com

*Counsel for 3M Company and Aearo Technologies LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 27, 2020, the foregoing document was served upon the following via email:

David T. Butsch
Christopher E. Roberts
Butsch Roberts & Associates LLC
231 South Bemiston Ave., Suite 260
Clayton, MO 63105
butsch@butschroberts.com
roberts@butschroberts.com

*/s/ Michael T. Crabb*
Attorney for 3M Company and Aearo
Technologies, LLC